UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RESOLUTE FOREST PRODUCTS, INC.,**

 Plaintiff,

 v.

**UNITED STATES DEPARTMENT OF AGRICULTURE,** *et al.*,

 Defendants.

Civil Action No. 14-2103 (JEB)

## MEMORANDUM OPINION

 Like two heavyweight fighters trying to mount a late-career comeback, the parties here return to the ring three years after what appeared to be the conclusion of their long-running bout over the United State Department of Agriculture's Softwood Lumber Checkoff Order. The Court has thrice issued decisions finding deficiencies in the same portion of the Order — the so-called "*de minimis* threshold," which exempts certain market participants from a mandatory assessment administered by the agency to fund industry-wide initiatives. After finally remedying the problematic aspect of the Checkoff Order, USDA now seeks to enforce it against Plaintiff Resolute Forest Products, Inc. Crying foul, Plaintiff argues that the Court's prior Opinions preclude USDA's current enforcement efforts. A court, not a party, however, "is generally the authoritative interpreter of its own remand." AT&T Wireless Servs., Inc. v. FCC, 365 F.3d 1095, 1099 (D.C. Cir. 2004). After engaging in the self-interpretation required here, the Court finds that USDA did, in fact, comply with its mandate on remand; it will thus deny Plaintiff's Motion to Enforce the Judgment along with its Contempt Motion.

1

**I.     Background**

   A. Statutory Background

The Commodity Promotion, Research and Information Act is one of more than a dozen federal statutes aimed at encouraging the sale of agricultural commodities, and it does so, in part, by facilitating "generic promotion" campaigns. See 7 U.S.C. §§ 7411–7425; see Avocados Plus, Inc. v. Veneman, 370 F.3d 1243, 1245 (D.C. Cir. 2004). Given the limited product differentiation in the agricultural industry, such generic promotion of any commodity (*e.g.*, "Got Milk?") advances demand across the industry, regardless of brand. In order to fund these campaigns, the CPRIA authorizes the Secretary of Agriculture to establish checkoff programs, which collect assessments from domestic manufacturers and foreign importers of a commodity to pay for generic marketing initiatives. See 7 U.S.C. § 7413. Among the commodities covered by the CPRIA are "products of forestry," including softwood lumber. Id. § 7412(1)(D).

The assessments created by these checkoff programs, however, are not imposed on every manufacturer or importer of a given commodity, regardless of size. Instead, the Secretary is authorized "to exempt from the order any de minimis quantity of an agricultural commodity otherwise covered by the order." Id. § 7415(a)(1). Determining this number is no easy task. As the Court previously explained in great detail, the Softwood Lumber Checkoff Order promulgated by USDA in 2011 exempted from assessment all entities that shipped or imported fewer than 15 million board feet per fiscal year. See, e.g., Resolute Forest Prods., Inc. v. USDA (Resolute I), 130 F. Supp. 3d 81, 86–88 (D.D.C. 2015).

   B. Procedural History

Resolute is an American importer of softwood lumber that became subject to the Checkoff Order's mandatory assessment in 2012. Id. at 88. In December 2014, it brought suit

against Defendants, raising multiple challenges to the Checkoff Order under both the U.S. Constitution and the Administrative Procedure Act. See ECF No. 1 (Complaint), ¶¶ 123–200. The Court granted USDA's Motion for Summary Judgment on all of Resolute's APA counts save one: Plaintiff's claim that Defendants' selection of 15 million board feet as the *de minimis* quantity to be exempted from the assessment was arbitrary and capricious in violation of the APA. See Resolute I, 130 F. Supp. 3d at 100–03. The Court remanded without vacatur to the agency for a "a reasoned and coherent treatment of the decision to select a 15 million-board-feet-per-year exemption as the 'de minimis quantity' exemption." Id. at 105.

This was more easily said than done, and the suit soon evolved into a veritable hamster wheel of challenges and remands. USDA responded to the Court's first decision with an explanation for the 15-million figure that raised more questions than it answered. See Resolute Forest Prods., Inc. v. USDA (Resolute II), 2016 WL 1714312, at *2 (D.D.C. Feb. 2, 2016). The Court again remanded without vacatur to the agency, hoping for an adequate justification. Id. at *3–4. This remand, like the one before it, proved fruitless. Having provided the agency with two opportunities to defend the *de minimis* exception, the Court held that USDA's promulgation of the Checkoff Order was "arbitrary and capricious" and therefore unlawful. See Resolute Forest Prods., Inc. v. USDA (Resolute III), 187 F. Supp. 3d 100, 124 (D.D.C. 2016). The Court, however, left determination of the proper remedy for another day, ordering the parties to attend a hearing "to discuss the appropriate next steps concerning the remedies sought by Plaintiff." Id. The precise contours of the remedy subsequently prescribed by the Court constitute the latest bone of contention in this long-running dispute.

In the spirit of investor Warren Buffet's "Rule No. One: Never Lose Money," and his "Rule No. 2: Never Forget Rule Number One," the parties focused their arguments at the

3

remedies stage on the money Resolute had already forked over since 2012 under the invalid *de minimis* threshold — *i.e.*, $1.1 million — and whether it was entitled to a refund in whole or in part. Regarding the future of the Checkoff Order itself, conversely, Resolute argued only that "[w]ere the Court to find that vacatur is required for Resolute to recover the assessments it paid[,] . . . governing precedent compels vacating the Checkoff Order." ECF No. 45 (Pl. Mem on Remedies) at 10 (emphasis added). The Court sided with Resolute as to the refund but did not touch the vacatur question, merely "remand[ing] the case and direct[ing] the Secretary to issue Plaintiff a full refund of its assessments." Resolute Forest Prods., Inc. v. USDA (Resolute IV), 219 F. Supp. 3d 69, 80 (D.D.C. 2016).

On remand, the agency complied with its prior representation to the Court that it would "diligently work[] on an economic analysis to select a de minimis threshold, and [would] establish that threshold via notice-and-comment rulemaking once its analysis [was] complete." ECF No. 49 (Def. Response on Remedies) at 1–2. After analyzing several potential thresholds, as well as the possibility of having no threshold at all, the Secretary proposed that the *de minimis* threshold be yet again set at 15 million board-feet per year. See ECF No. 59 (Def. Opp. to Pl. Motion to Enforce the Judgment) at 2. Upon evaluating the almost-universally supportive comments — Resolute, for its part, declined to participate — the agency issued a final rule establishing that very exemption. See 82 Fed. Reg. 49,485 (Oct. 26, 2017). During this period, USDA continued to enforce the mandatory assessment and to grant softwood-lumber manufacturers and importers the benefit of the *de minimis* exception — *i.e.*, it did not collect from entities producing or importing less than 15 million board feet. The re-established *de minimis* rule became effective in November 2017. Id. As required by law, in 2018 the

4

Secretary conducted a referendum on the Checkoff Order, and the industry overwhelmingly approved of the Order's continuance. See 83 Fed. Reg. 5955 (Feb. 12, 2018).

USDA next sought to wield its newly sharpened axe against Resolute. Defendants alerted Plaintiff that it was now subject to the Checkoff Order's mandatory assessment, and two years of back and forth between the parties ensued. Finally, USDA filed an administrative complaint to enforce assessments against Resolute dating back to December 2017. See Def. Opp. to Pl. MEJ at 2. Resolute now moves for this Court to bar USDA's actions as contrary to its prior judgments in the above-chronicled string of decisions. It additionally moves for an Order demanding that USDA show cause as to why it should not be held in contempt for the alleged violation of the Court's Orders. As Defendants ultimately prevail on the former Motion, they certainly cannot be held in contempt, thereby mooting the latter.

## II. Analysis

As one of their myriad responsibilities, district courts retain the "authority to enforce the terms of their mandates." Anglers Conservation Network v. Ross, 387 F. Supp. 3d 87, 93 (D.D.C. 2019) (quoting Flaherty v. Pritzker, 17 F. Supp. 3d 52, 55 (D.D.C. 2014)). A court should grant a motion to enforce the judgment if a "prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." Flaherty, 17 F. Supp. 3d at 55 (quoting Heartland Hosp. v. Thompson, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)). By contrast, if a plaintiff "has received all relief required by that prior judgment, the motion to enforce is denied." Id. (quoting Heartland Hosp., 328 F. Supp. 2d at 11).

At the heart of this dispute lies the proper interpretation of the Court's mandate in the last go-round between the parties. On the substance, Resolute does not identify any infirmities in the USDA's newly promulgated *de minimis* exception. Instead, it argues that the Court, in holding

5

that Defendants had violated the APA and in remanding to the agency to provide a full refund to Resolute, implicitly vacated the entire Checkoff Order. Because the agency promulgated only a new *de minimis* exception (rather than an entirely new Checkoff Order), Resolute believes that USDA cannot enforce the Checkoff Order against it — or any party, for that matter.

To dispose of Resolute's Motion, the Court must therefore interpret its own Orders. In picking among several competing constructions of the relevant mandates, it bears repeating that "[t]he court is generally the authoritative interpreter of its own remand." Pub. Emps. for Envtl. Responsibility v. Hopper, 827 F.3d 1077, 1090 (D.C. Cir. 2016) (quoting AT&T, 365 F.3d at 1099). In performing this analysis, it is guided "not only by the text" of the Order in question but also "by its relevant opinions." Anglers Conservation Network, 387 F. Supp. 3d at 93 (citing City of Cleveland v. U.S. Fed. Power Comm'n, 561 F.2d 344, 346–47 (D.C. Cir. 1977)). A motion to enforce the judgment does not provide a means for a court to reconsider its judgment or for a plaintiff to raise new arguments that should have been offered in prior proceedings. Instead, a court's authority to enforce its mandate is simply grounded in "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." Id. (emphasis added) (quoting Int'l Ladies' Garment Workers' Union v. Donovan, 733 F.2d 920, 922 (D.C. Cir. 1984)).

The Court finds that there are several ways in which its 2016 mandate could have been interpreted, but only one construction is reasonable given the context provided by the Court's Opinions. It moves from the interpretation that yields the least severe sanction to the one that results in the most serious setback to the Government. At the end of the day, it becomes clear that the Court did not "unambiguously" vacate the entire Checkoff Order.

First, the parties might have construed the Court's Orders following its decision on the agency's Motion for Summary Judgment and the subsequent remedies hearing as remanding without vacatur for a third time, so that the agency could finally compile a logical justification for the *de minimis* exception. The Court's Opinion, however, expressly forecloses that construction, noting: "The Court has given the agency multiple chances to provide that explanation, and it has fallen short each time. Without any reliable data to support the selection of 15mmbf as the de minimis quantity exempted, that decision cannot be characterized as anything other than arbitrary and capricious." Resolute III, 187 F. Supp. 3d at 124.

Second, the parties could have interpreted the Court's orders as vacating only the Checkoff Order's *de minimis* exception — *i.e.*, the portion that the Secretary proved unable to justify. This reading, however, would make little sense, as the *de minimis* exception provides a floor for the collection of the mandatory assessment from various entities. Far from imposing any limitation on the agency, vacating the *de minimis* exception would have satisfied no players in the industry, providing USDA *carte blanche* to enforce the Checkoff Order against any company or person that manufactures or imports softwood lumber, irrespective of size.

Third and most sensibly, the parties could have interpreted the mandate as "enjoin[ing] USDA" from "collecting further assessment from Plaintiff under the current Checkoff Order," Minute Order of June 1, 2016 (emphasis added), but otherwise leaving the Order in place while USDA formulated a new *de minimis* exception. Although vacatur is the standard remedy for improper agency action, courts have discretion to choose a different path forward. See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Before vacating a rule, a court may consider both the "seriousness of the rule's deficiencies" and "the disruptive consequences of an interim change that may itself be changed." Id. Perhaps

7

because the Court took issue with only a sliver of the Checkoff Order and severe disruptive consequences would follow from the entire Order's vacatur — including, as USDA noted at the most recent hearing, the dissolution of the Softwood Lumber Board (an entity with a $15 million operating budget), the firing of the Board's employees, and the termination of the assessment program across the industry — both parties appear to have assumed that the Court would not vacate the Order in full at the remedies stage. Resolute, in fact, sought vacatur only if it was necessary in order for Plaintiff to secure the cash refund. See Pl. Remedies Mot. at 10. The agency, meanwhile, represented time and again that the "remainder of the order" would continue to be valid even as it formulated a new *de minimis* exception. See ECF No. 47 (Def. Reply on Remedies) at 1–2.

In arguing a fourth interpretation — *viz.*, that the Court vacated the entire Checkoff Order — Resolute points primarily to its May 2016 Opinion finding the Checkoff Order "unlawful" and its June 2016 order enjoining USDA from enforcing the Checkoff Order against Resolute. See Minute Order of June 1, 2016. Plaintiff's interpretation, however, would generate several anomalies. First, the Court expressly declined to address the remedies question until issuing an Opinion on that topic several months later in November 2016. It therefore could not have vacated the Order in June 2016. Indeed, if the Court had "unambiguously" vacated the Checkoff Order in June, Resolute would not have argued during the remedies stage that the Court should vacate the Order only "if necessary for Resolute to recover the assessments it paid." Pl. Remedies Mot. at 10. Additionally, if the Court had vacated the Checkoff Order at the ensuing remedies stage, it would not have ordered the agency merely to refund Resolute the $1.1 million in funds but would have instead provided a more detailed remedial order to address the

8

extraordinarily disruptive consequences of a vacatur. See N.C. Fisheries Ass'n, Inc. v. Gutierrez, 550 F.3d 16, 20 (D.C. Cir. 2008).

In sum, the Court's Opinion did not implicitly — let alone "unambiguously" — vacate a comprehensive scheme governing an industry and did not "imply that anything more was required" than the promulgation of a new *de minimis* exception. See Heartland Reg'l Med. Ctr. v. Leavitt, 415 F.3d 24, 28–29 (D.C. Cir. 2005) (affirming denial of motion to enforce judgment because "the only obligation [the court] expressly imposed on the agency was to consider the two alternatives suggested during the comment period. That is precisely what the agency did."). The Court identified a gap in the reasoning undergirding the Checkoff Order's *de minimis* exception, and it ordered USDA to refund Plaintiff $1.1 million in funds. USDA "complied with the judgment" by refunding Resolute and "by filling the analytical gap identified in that opinion." Id. at 29. The Court is therefore satisfied that Resolute has received all relief required by the prior judgments, which requires the dismissal of its Motion to Enforce the Judgment.

Although the agency ultimately arrived at the same 15 million board-feet threshold, "the usual rule is that, with or without vacatur, an agency that cures a problem identified by a court is free to reinstate the original result on remand." Id. at 29–30. Even if Resolute could identify issues with the new *de minimis* threshold, the proper means of attacking any such infirmity would be via a new suit bringing a timely APA claim. Similarly, Resolute's assertion that it is now precluded by the statute of limitations from challenging <u>other</u> aspects of the Checkoff Order unless the entire Order is re-promulgated, see 7 U.S.C. § 7418(a)(4) — an interpretation of the CPRIA never before raised in this Court and one that the agency disputes — does not relate at all to whether the Court vacated the Order in the first instance. This novel argument is not properly brought via a motion to enforce the Court's prior judgment years after the agency began

9

attempting to enforce the Order — the event that may have started the clock on the statute of limitations.

## III. Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion to Enforce the Judgment and its Motion for Civil Contempt. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 12, 2019